UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 AUG -8 PM 2: 17

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| JOHN WAYNE BROWN, and<br>CELESTE BROWN,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE BLACK & DECKER<br>CORPORATION,<br><br>    Defendant. | CASE NO. CV 03-B-1086-S<br><br>ENTERED<br>AUG - 8 2003 |

## MEMORANDUM OPINION

Currently before the court is a Motion for Summary Judgment filed by defendant, The Black & Decker Corporation ("defendant" or "Black & Decker"). Plaintiffs John and Celeste Brown, (John Brown hereinafter referred to as "plaintiff" or "Brown") filed this ERISA action seeking payment of back pension benefits, reinstatement of his former monthly benefit payment, and other damages allegedly caused by the defendant's refusal to pay benefits in the amount to which plaintiff believed he was entitled. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted in part and denied in part.

### I. FACTUAL SUMMARY

Brown was employed with Black & Decker for many years before retiring in February 1998. When he retired, he began receiving pension benefits under the plan then in effect at Black & Decker. Later that year, in June 1998, defendant instituted a Voluntary Retirement Program ("VRP") that allowed eligible employees to retire early with increased pension benefits.

\\

Defendant extended plaintiff the opportunity to participate in this program on condition that he sign a release of claims against the company.

Black & Decker sent plaintiff a package of materials about the VRP, including a letter that stated that his monthly pension benefit under the plan would be $1,102.07, as compared to $921.63, the amount of his monthly benefits under the older plan. The letter also stated that these monthly benefits would be "paid to [him] during [his] lifetime." (VRP Letter.) In addition, the VRP Letter stated that plaintiff would receive a VRP Social Security Supplement of $862.00 per month, thus totaling $1,964.07 in monthly benefits.[1] Plaintiff called Jim Booth, an employee in the Human Resources department at Black & Decker, to ask whether the amount of benefits stated in the letter was correct.[2] Booth told him "that if the letter [plaintiff] had received from B&D stated that [plaintiff] would receive $1,102.07 for life, then that was the correct amount [plaintiff] would receive every month until death." (Brown Aff. ¶ 1.)

On July 20th 1998, plaintiff formally elected to participate in the VRP by signing an election form which included a release of claims against Black & Decker. In this document, plaintiff released Black & Decker from all claims arising from or related to his employment, and covenanted not to file a lawsuit asserting any such claims. The release specifically stated, however, that plaintiff did not thereby release Black & Decker from claims "unrelated to [his]

---

[1] According to the letter, the VRP Social Security payments would terminate at the earlier of plaintiff's 62d birthday or his death.

[2] The letter encouraged individuals considering participation in the VRP to call a toll-free hotline if they had any questions about the VRP.

2

employment or the termination of [his] employment or on any right or claim that may arise after [plaintiff] sign[ed] th[e] election form."[3]

Plaintiff received monthly benefits in the amount stated in the VRP Letter until October 2002 when defendant reduced his monthly pension benefit to $237. Plaintiff filed this action seeking reinstatement of the monthly pension benefit amount allegedly represented in the letter, $1102.67, as well as past due benefits. Plaintiff also seeks costs and attorneys' fees, and "compensatory and punitive damages to redress the Defendant's breach of fiduciary duties." (Compl., Prayer for Relief.)

In Count I of the Complaint, which is entitled "ERISA Benefits," plaintiff does not refer to the terms of the ERISA plan, nor does he include a specific request for benefits due under the terms of the pension plan. Rather, Count I alleges only that plaintiff elected to participate in the VRP in reliance on the letter sent to him describing the VRP as well as the phone conversation he had with Booth, and that because his benefits were significantly reduced he has "suffered extreme anxiety, mental anguish, emotional distress, and financial damage." (Compl. ¶ 14.) As documented in this count and in his affidavit, Brown claims he made many financial decisions believing he would continue to receive a monthly pension benefits payment well in excess of the amount of his reduced payment.

In Count II, which is titled "Breach of Fiduciary Duty," plaintiff alleges that defendant breached fiduciary duties by misrepresenting the amount of his benefits and by failing to "live up

---

[3]In addition, the release included the following statement, "I have carefully read and fully understand all the provisions of this election form, which, together with the VRP, sets forth the entire agreement between me and the Company. I have not relied upon any statement or representation, written or oral, not set forth in this election form, the VRP, or the summary of the VRP."

3

to the affirmative representations" about his benefits. (Compl. ¶¶ 17,19.) Count II also includes the following allegation, "By wrongfully interfering with Plaintiff John Brown's valuable pension rights, Defendant has violated the terms of the Plan and the ERISA statutes." (*Id.* ¶ 18.)

Defendant moves for summary judgment in this case before filing an answer and before the parties have conducted any discovery.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

**1. Release**

If the Release executed by plaintiff in 1998 is applicable to the claims asserted against Black & Decker in this lawsuit, then summary judgment is due to be granted. However, because the release specifically excepts, and therefore is not applicable to, the claim asserted by plaintiff in count one, summary judgment will be denied as to that claim.

By electing to participate in the VRP, plaintiff agreed to release Black & Decker from liability for claims relating to his employment that arose or accrued before the date the release was executed, in this case before July 20, 1998. The ERISA claim in count one does not relate to plaintiff's employment with Black & Decker, and did not accrue until four years after plaintiff executed the release when defendant reduced plaintiff's monthly pension benefits to $237.00.

An ERISA claim for wrongful denial of benefits typically accrues at the time those benefits are denied. Plaintiff, however, does not allege that defendant wrongfully withheld benefits properly payable under the terms of the pension plan. This is not the only theory under which plaintiff can recover ERISA benefits. Where pertinent provisions of a pension plan are ambiguous, and it has been represented to plaintiff that certain benefits are available, but benefits in an lesser amount are actually paid, plaintiff can sue for retroactive and prospective reinstatement of the benefits as represented based on a theory of equitable estoppel. *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1090-91 (11th Cir. 2000); *Kane v. Aetna Life Ins.*, 893 F.2d 1283 (11th Cir. 1990). Representations about an ambiguous plan are said to be

interpretations of the plan, rather than amendments or modifications, and plaintiff can reasonably rely on those interpretations where the plan does not unambiguously provide otherwise.[4]

In this case, the plan documents have not been made a part of the record. Therefore, there is a least a genuine issue of material fact regarding the ambiguity of pertinent provisions of the plan documents, and plaintiff alleges that he relied on defendant's representations concerning the plan.[5] The court finds plaintiff has sufficiently stated a claim based on equitable estoppel. To determine whether plaintiff released this claim, the court must consider when it accrued.

Defendant contends that plaintiff's claim accrued before he executed the release when the representations were made.[6] The court disagrees. It would be inconsistent to find that plaintiff *reasonably* relied on representations about an ambiguous plan, thereby stating a cause of action, but nonetheless find that any claims based on these representations accrue at the time the representations were made. Plaintiff was incapable of determining that defendant would not pay

---

[4]Written or oral representations that are not consistent with an unambiguous plan cannot modify its terms. *Alday v. Container Corp. of Am.*, 906 F.2d 660, 665 (11th Cir. 1990).

[5]Defendant contends that plaintiff should not be entitled to allege that he relied on the letter and the conversation with Booth. In the release, which the court finds is inapplicable to the claims asserted, plaintiff acknowledged that he had not "relied upon any statement or representation, written or oral, not set forth in this election form, the VRP, or the summary of the VRP." Given the fact that the plan documents are not in the record, the court is not willing to find that this portion of the release demands that summary judgment be granted. Furthermore, even if the plan documents are unambiguous, defendant is not insulated from liability for fraudulent behavior. *See Alday*, 906 F.2d at 660 n. 15 (stating that a fiduciary is not necessarily insulated from liability even where the plan documents are unambiguous when it makes fraudulent promises in informal communications that deceive employees and contradict the terms of the plan documents).

[6]If defendant's argument were accepted then plan participants could not assert claims based on pre-release statements made by representatives manning the VRP Hotline, which Hotline defendant encouraged potential plan participants to use if they had questions or concerns about the plan. (VRP Letter.)

his benefits in accordance with the representations at the time they were made. Based on the foregoing, the court finds that the claim in count one accrued when defendant reduced his benefits, and summary judgment as to the claim one will be denied.

**2. Claims in Count II**

The law provides that an individual with a claim for benefits under 29 U.S.C. § 1132(a)(1) cannot also bring a claim for benefits on a theory of breach of fiduciary duty under § 1132(a)(3). *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1090-91 (11th Cir. 2000). Furthermore, plaintiffs may not recover the remainder of the damages they seek in this claim as they are legal in nature, as opposed to equitable, and thus precluded under ERISA. Therefore, defendant is entitled to summary judgment on plaintiffs' claim in count two.[7]

### IV. CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted in part and denied in part. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 9th day of August, 2003.

SHARON LOVELACE BLACKBURN
United States District Judge

---

[7] Plaintiff Celeste Brown states a claim only under count two.

7