UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOHN WAYNE BROWN,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| vs. } | **CASE NO. CV-03-B-1086-S** |
| } | |
| **THE BLACK & DECKER** } | |
| **CORPORATION,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OPINION**

Currently before the court is a Motion for Summary Judgment filed by defendant Black & Decker Corporation. (Doc. 17.) Plaintiff John Wayne Brown filed this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.* The court granted defendant's motion in open court on February 18, 2004. (Doc. 20.) Because the court did not then enter a written opinion, it now issues the following rationale for granting defendant's motion.

**I.   FACTUAL SUMMARY**

Plaintiff was hired at Black & Decker on June 27, 1968 and began participation in the Black and Decker Pension Plan ("the Plan") on August 1, 1970. (Brusca Aff., Ex. B at B&D 0106.) He retired from the company effective January 31, 1998, and became eligible for

pension payments under the Plan the day after his retirement. (*Id.*) Plaintiff was fifty-seven years old at the time of his retirement. (*Id.*)[1]

In January of 1998, defendant mailed a benefit payment election form to plaintiff in anticipation of his retirement. (*Id.* at B&D 0100-03.) The election form was accompanied by a detailed explanation of the various payment options concerning return of contributions and pension payouts, including the Age 62 Level Income Annuity Option. (*Id.* at B&D 0104-10.) The form plaintiff received provided the following information about that option:

> This method is available only if your benefit starts before Social Security Retirement Age. You receive an increased pension benefit up to the age you select (either age 62 or Social Security Retirement Age). After the age you select, your monthly benefits will be decreased. The difference between the two pension amounts will be equal to our estimate of Social Security benefits at the age you select (either age 62 or Social Security Retirement Age), so that your total income from the Plan and Social Security will remain about the same throughout your retirement. The decreased amount will then be paid as long as you live, but [will] stop when you die. No benefits are paid to anyone after your death under this option.

(*Id.* at B&D 0110.) Plaintiff signed this election form on January 19, 1998 and returned it to defendant. (*Id.* at B&D 0103.) He elected to receive a return of contributions of $11,655.66 and to receive his pension benefit under the Age 62 Level Income Annuity Option. (*Id.* at B&D 0101-02.) Plaintiff's choices resulted in a pension payment of $921.63

---

[1] The Pension Explanation form cited gives plaintiff's age at his pension payment start date as fifty-eight years old. (Brusca Aff., Ex. B at B&D 0106.) However, plaintiff's birth date is listed as July 2, 1940, making him fifty-seven years old when his pension payments started on February 1, 1998.

per month until age sixty-two followed by payments of $56.63 per month from age sixty-two until death. (*Id.* at B&D 0102, 0110.)

On June 1, 1998, four months after plaintiff's retirement, defendant amended the Plan to offer employees a different option called the Voluntary Retirement Plan ("VRP"). (*Id.* at B&D 0117.) Black & Decker offered the VRP to certain qualified employees who had already retired in 1998, including plaintiff. (*Id.* at B&D 0115, 0117.) The VRP allowed employees who were eligible to retire to receive enhanced benefits in exchange for retiring. (*Id.* at B&D 0114, 0117.) Defendant computed the enhanced benefits under the VRP with the assumption that the participating employee had three additional years with respect to both service and age; additionally, employees who retired prior to age sixty-two would be provided an extra Social Security supplement until their sixty-second birthday. (*Id.* at B&D 0114-15.)

Plaintiff received a letter announcing the VRP ("the Announcement Letter") and a copy of "The Black & Decker Voluntary Retirement Program: A Window of Opportunity" ("the VRP Booklet"). (*Id.* at B&D 0117-47.) The Announcement Letter contained the following personalized computation of his anticipated benefit if he was accepted for enrollment in the VRP:

|  | *Monthly Pension Benefits Under the Current Plan* | *Monthly Pension Benefit if You Enroll in the VRP* |
|---|---|---|
| *Paid to you during your lifetime* | *$921.63* | *$1,102.07* |
| *Paid to your survivor after your death* | *$0.00* | *$0.00* |

(*Id.* at B&D 0117.)  The Letter also informed plaintiff that under the VRP he would "receive a VRP Social Security supplement of $862.00 per month" to be paid "until the earlier of [his] 62nd birthday or [his] death." (*Id.*) Furthermore, the Letter noted that other than the monthly pension increase and the addition of the Social Security supplement, there would "be no changes in [plaintiff's] retirement benefits if you participate in the VRP." (*Id.*)

The VRP Booklet described the VRP and supplemented the Summary Plan Description for the Plan.  Just like the Plan, the "VRP allow[s] [participants] to receive [their] monthly pension benefit in several different forms." (*Id.* at B&D 0131.)  The VRP Booklet contained a chart summarizing the different forms of payment an employee could choose from, including the Level Income Annuity option, which plaintiff had chosen. (*Id.* at B&D 0132.)  The chart stated that the Level Income Annuity "[p]rovides monthly payments to you for life.  Payments are larger until you become eligible for Social Security and smaller afterwards." (*Id.*)  The VRP Booklet also noted that "[t]he specific terms and conditions of the VRP and the benefits provided by it are set forth in the plan document, which alone governs your rights under the program." (*Id.* at B&D 0146.)  The Plan states that under the Level Income Annuity option the participant "will receive monthly annuity payments for life payable in a greater amount before the expected commencement date for the [participant's] Social Security benefits [age 62 in plaintiff's case] . . . and a lesser amount (actuarially determined) after that expected commencement date for the [participant's] Social Security benefits." (*Id.* at B&D 0111.)

Plaintiff applied to participate in the VRP and signed a mandatory release of claims against Black & Decker on July 20, 1998. (*Id.* at B&D 0166-67.) By signing the release, plaintiff acknowledged that he had "not relied upon any statement or representation, written or oral, not set forth in this election form, the VRP, or the summary of the VRP." (*Id.* at B&D 0167.) From October 1998 until July 2002, each month plaintiff received a pension benefit of $1,102.07 and a VRP Social Security supplement of $862.00. (*Id.* at B&D 0148-49.) The total amount received was $1,964.07, which was $1,042.44 more per month that plaintiff would have received had he not elected to participate in the VRP. (*Id.* at B&D 0117, 0148.) When plaintiff turned sixty-two on July 2, 2002, his pension benefit was reduced and the VRP Social Security supplement ended. (*Id.* at B&D 0149.) Under the enhanced benefits of the VRP, plaintiff's pension benefit was reduced to $237.07 per month. (*Id.*) This amount is $180.44 more than the $56.63 per month that plaintiff would have received had he not elected to participate in the VRP. (*Id.* at B&D 0110.)

On August 19, 2002, plaintiff sent a letter to Black & Decker claiming that he was entitled to more pension benefits under the VRP. (*Id.* at B&D 0148-50.) Specifically, plaintiff demanded that his benefit payments be increased to $1,102.07 per month, the amount of pension he was receiving prior to his sixty-second birthday. (*Id.* at B&D 0149.) On September 25, 2002, defendant informed plaintiff that his claim for additional benefits had been denied. (*Id.* at B&D 0151-52.) Black & Decker stated that when plaintiff "attained age 62, pursuant to the Age 62 Level Income Annuity which he elected when he retired, his

5

monthly pension became $237.07." (*Id.* at B&D 0151.) Plaintiff's attorney submitted an appeal of the denial to the Black & Decker Pension Committee on November 11, 2002. (*Id.* at B&D 0153.) In the appeal, plaintiff's attorney outlined plaintiff's grounds for believing that he should continue receiving his previous level of benefits:

> After Mr. Brown received the VRP Letter and attachments from the Company, he telephoned Mr. Jim Booth, a Black & Decker employee in the Human Resource office in Towson, Maryland in order to confirm Mr. Brown's understanding from reading the VRP Letter that he would be entitled to monthly pension benefits in the amount of $1964.07 until his 62nd birthday and, after reaching age 62, monthly benefits of $1102.07 for the remainder of his life. Mr. Booth confirmed in the telephone conversation that Mr. Brown's understanding was correct and that he would receive $1102.07 in monthly pension benefits for the rest of his life.

(*Id.* at B&D 0154.) Plaintiff also alleged that he suffered financial damage as a result of his alleged reliance upon the Announcement Letter and the phone call.[2] (*Id.*)

In the course of reviewing plaintiff's appeal, Black & Decker spoke with Booth on February 19, 2003 to inquire as to whether he recalled speaking with plaintiff. (*Id.* at B&D 0260.) Booth stopped working for defendant on April 9, 1998. (Jones Aff., Ex. A.) Prior to leaving Black & Decker, Booth was the Human Resources Representative for the Product Service Division, in which plaintiff worked. (Brusca Aff., Ex. B. at B&D 0096.) Booth told defendant's representative that he recalled speaking to plaintiff regarding retirement benefits,

---

[2] Plaintiff claimed that, because he believed that he would be receiving a monthly benefit payment of more than $1,100, he turned down offers of employment that would have provided additional income, and his wife retired after her sixty-second birthday. He also alleged that he bought a new automobile in reliance on the promise of future payments. (Brusca Aff., Ex. B at B&D 0154.)

but he did not recall discussing the VRP.[3] (*Id.* at B&D 0260.) Plaintiff's affidavit states that he spoke with Booth in early August of 1998, and that Booth told him that "if the letter [plaintiff] received from [defendant] stated that [plaintiff] would receive $1102.07 for life, then that was the correct amount [plaintiff] would receive every month until [his] death." (*Id.* at B&D 0161.) Plaintiff signed the release of claims to enroll in the VRP on July 20, 1998. (*Id.* at B&D 0166-67.) Both of these dates are several months after Booth left his employment with defendant in April of 1998.[4] (Jones Aff., Ex. A.)

The Pension Committee upheld the denial of plaintiff's claim on March 10, 2003. (Brusca Aff., Ex. A at B&D 0261-64.) The Committee found that plaintiff was receiving the correct amount of benefits under the terms of the Plan and the VRP. (*Id.*) The Pension Committee made the following findings:

> With respect to the announcement letter, we believe it was quite clear, when construed in its entirety [with the attachments], that the reference to "Paid to you during your lifetime" did not misrepresent that Mr. Brown would receive the $1,102.07 benefit beyond age 62 and throughout his lifetime. The juxtaposition of that legend with the "survivor" legend beneath it clearly indicates that the distinction being drawn was merely one of survivorship and not the conferral of some new benefit guaranteed for life regardless of Mr. Brown's earlier payment election. This meaning is further confirmed by the fact that

---

[3] Mr. Booth's cited statements, made to Bill Bruner of Black & Decker and given to the court in an interoffice memorandum, are most likely hearsay not within any exception. However, plaintiff has raised no objection to these statements, and the statements would be properly admissible if Booth himself were to make them at trial.

[4] Plaintiff seems to concede in his brief to the court that he may have been speaking to another man named Jim when he believed he was speaking with Mr. Booth. (Doc. 22 at 5 n.1.)

> the legend "Paid to you during your lifetime" is also placed next to Mr. Brown's <u>then</u> <u>current</u> benefit level of $921.63, which he clearly knew was subject to reduction at age 62. In addition, the announcement letter was sent to Mr. Brown with a comprehensive brochure, which explained that the VRP benefit consisted of a re-computing of Mr. Brown's benefits under the Pension Plan, with an adjustment for three years in credited service and three years in credited age. Nothing in the accompanying explanation about how the VRP worked suggested that there had been any alteration in his election of the Age 62 Level Income Annuity option. . . .
>
> Alternatively, the comments of James Booth were not improperly misleading. At the outset, the announcement letter Mr. Brown is relying on specifically advised him where to seek information about VRP benefits; and it did not include Mr. Booth. . . .
>
> Furthermore, the remarks that Mr. Brown attributes to Mr. Booth, assuming they were made, were not misleading. Mr. Booth's alleged remark about the VRP providing a replacement was true: Mr. Brown's benefits changed. Mr. Booth's alleged remark about what benefit Mr. Brown could expect "if the letter said you would receive "$1102.07 <u>for</u> life," was also not misleading because the letter did not say he would receive "1102.07 <u>for</u> life." Moreover, Mr. Booth's conditional statement clearly indicated that he did not know the particulars of Mr. Brown's letter; and that he was not the person from whom Mr. Brown should have been seeking the confirmation he allegedly sought.

(*Id.* at B&D at 0262-63.) It is these findings, and the Pension Committee's ultimate decision based thereon, which the court is now called upon to review.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no

genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III.  DISCUSSION

**A.  Standard of Review**

The ERISA statute does not provide a particular standard of review for decisions of a plan administrator. *Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1282 (11th Cir. 2003). Instead, the Supreme Court established a varying standard of review in *Firestone Tire*

*& Rubber Co. v. Bruch*, 489 U.S. 101 (1989).  In that case, the Court held that "a denial of benefits . . . is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  489 U.S. at 115.  Defendant argues that the decision of the Pension Committee should be subject to the arbitrary and capricious standard of review.  (Doc. 21 at 10-11; Doc. 23 at 1-3.)  Plaintiff asserts that the de novo standard should be applied. (Doc. 22 at 9-11.)  The Eleventh Circuit has applied the *Bruch* case in the following manner:

> This circuit has interpreted *Bruch* to mandate *de novo* review unless the plan *expressly* provides the administrator discretionary authority to make eligibility determinations or to construe the plan's terms.  Thus, this court has applied the arbitrary and capricious standard when the plan provides that the administrators['] "determinations shall be final and conclusive" so long as they are "reasonable determinations which are not arbitrary and capricious."  This court has also applied the arbitrary and capricious standard when the plan confers upon the administrator "full and exclusive authority to determine all questions of coverage and eligibility" and "full power to construe the provision[s]" of the plan.  On the other hand, this court has applied the *de novo* standard when the plan confers upon the administrator the authority to make initial eligibility determinations "according to the terms of the Plan."

*Kirwan v. Marriott Corp.*, 10 F.3d 784, 788 (11th Cir. 1994) (footnotes omitted).  The court must therefore determine whether the Pension Committee's level of discretion is commensurate with an arbitrary and capricious standard of review or a de novo standard.

Defendant argues that the Pension Plan clearly gives the Pension Committee discretionary authority. The language defendant relies upon is found in Section 10.2 of the Plan:

> The Pension Committee shall administer the Plan in accordance with its terms and shall have all the powers necessary to carry out the provisions of the Plan and the authority to enforce the terms of the Plan for and on behalf of any and all parties interested therein. . . . *The Pension Committee's determinations in all Plan matters over which it has power and responsibility shall be final and conclusive and binding upon all persons having an interest in the Plan.* Without limiting the generality of the foregoing, the Pension Committee shall have the following powers and duties, such powers and duties to be exercised in the Committee's sole and absolute discretion:
>
> . . . .
>
> To determine on appeal all questions arising in the Plan's administration, interpretation and application, *including the eligibility of any person to participate in the Plan* and any questions about the status and rights of the Employer, Employees, Members, Spouses, Beneficiaries and any other persons, but no member of the Pension Committee may participate in any such appeal involving any questions relating solely and exclusively to the Member's own participation or benefits under the Plan.

(Doc. 23, Ex. A at B&D 0038 (emphases added).) As noted, the Plan provides that the Pension Committee's determinations are "final and conclusive and binding upon all persons having an interest in the Plan." (*Id.*) Defendant asserts that these provisions give the Pension Committee a level of discretion to determine coverage and eligibility questions sufficient to mandate arbitrary and capricious review. (Doc. 23 at 2-3.)

Plaintiff argues that de novo review is the proper standard because, he believes, the Pension Plan does not grant the Committee sufficient discretionary authority to make eligibility determinations or to construe the Plan's terms, as is necessary under *Kirwan*. 10 F.3d at 788. (Doc. 22 at 10-11.) Plaintiff also points out that defendant does not cite Plan language that grants either "'full and exclusive authority to determine all questions of coverage and eligibility' or 'full power to construe the provision of the [Plan].'" (*Id.* at 10 (quoting *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989).) However, the language of Section 10.2 cited and emphasized above clearly gives the Committee the power to decide all questions regarding the Plan's interpretation and application, including eligibility determinations.[5] Case law within the Eleventh Circuit has held that similar language was sufficient to grant discretionary authority to a plan administrator to determine coverage and eligibility issues. These courts all found the arbitrary and capricious standard to be the appropriate level of review. *See Hunt v.*

---

[5] Defendant incorrectly argues that Section 10.2 expressly gives the Pension Committee "discretionary authority to construe the Plan's terms." (Doc. 23 at 2.) While plaintiff is correct that no language in the Plan gives the Committee such express authority over the *construction* of the Plan's terms, this power is not necessary for application of the arbitrary and capricious standard of review. *See Bruch*, 489 U.S. at 115 (allowing arbitrary and capricious review when plan administrator has "authority to determine eligibility for benefits *or* to construe the terms of the plan" (emphasis added)); *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 912 (11th Cir. 1997) ("We have interpreted *Firestone* to mandate an arbitrary and capricious standard of review . . . if the administrator has discretionary authority to make eligibility determinations or to construe disputed terms of the plan." (citing *Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir. 1989))). Because the court finds that the Plan gave the Pension Committee discretion in regards to eligibility determinations, the lack of an express power to construe Plan terms does not trigger de novo review.

*Hawthorne Assocs., Inc.*, 119 F.3d 888, 912 (11th Cir. 1997) (plan language granted administrator power to "initially determine all questions arising from the administration, interpretation, and application of the Plan pursuant to all applicable law, agreements and contracts"); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989) (administrators had "full and exclusive authority to determine all questions of coverage and eligibility"); *Vann v. Nat'l Rural Elec. Co-op. Assoc. Ret. & Sec. Program*, 978 F. Supp. 1025, 1032 (M.D. Ala. 1997) (administrators given "authority to determine all questions arising in connection with the Program, including its interpretation"). This language is not materially different from the text of Section 10.2 that grants the Committee "sole and absolute discretion . . . [t]o determine on appeal all questions arising in the Plan's administration, interpretation and application, including the eligibility of any person to participate in the Plan and any questions about the status and rights" of those who are governed by the Plan. (Doc. 23, Ex. A at B&D 0038.) This case concerns the rights of plaintiff under the Plan. Therefore, plaintiff's assertion that the Committee lacks sufficient discretion in the administration of the Plan is incorrect, and the court will apply the arbitrary and capricious standard of review to the Pension Committee's actions.[6]

---

[6] Plaintiff cites *Kirwan* for the proposition that the de novo standard is proper "[w]hen a plan is silent or ambiguous as to the Administrator's discretionary authority." (*Id.* at 11 (quoting *Kirwan*, 10 F. 3d at 789).) However, Section 10.2 lists over a dozen important powers and duties over which the Committee exercises "sole and absolute discretion." (Doc. 23, Ex. A at B&D 0038.) A written grant of absolute discretion over a discrete list of powers cannot be said to constitute silence or ambiguity as to the discretionary authority of the Committee, and therefore this cited language from *Kirwan* is not relevant to the Plan at issue here.

**B. Was the Committee's Decision Arbitrary and Capricious?**

Under this standard of review, "the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989); *see also Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1326 (11th Cir. 2001) (noting that a decision is not arbitrary and capricious unless no reasonable basis exists for the decision); *Cagle v. Bruner*, 112 F.3d 1510, 1518 (11th Cir. 1997) (per curiam) ("Under the arbitrary and capricious standard of review, we are limited to deciding whether the . . . interpretation of the plan was made rationally and in good faith."). If the court finds a reasonable basis for the Pension Committee's decision, that decision will be upheld as neither arbitrary nor capricious, "even if there is evidence that would support a contrary decision." *Jett*, 890 F.2d at 1140.

Plaintiff contends that he remains entitled to the increased benefits he had been receiving under the VRP prior to his sixty-second birthday. (Doc. 22 at 12-14.) Plaintiff relies on the chart in the Announcement Letter that states that plaintiff's monthly pension benefit under the VRP would be $1,102.07, "paid to you during your lifetime." (*Id.* at 13 (quoting Brusca Aff., Ex. B at B&D 0117).) Plaintiff also points the court to language in the VRP Booklet: "The VRP provides you with the following enhanced benefits: 1. *Increased monthly pension benefits*. Your accrued retirement benefit as of August 31, 1998, will be increased, so that your monthly payments after retirement will be larger." (*Id.* (quoting

Brusca Aff., Ex. B at B&D 0126).) Plaintiff argues that reading these two statements together results in a reasonable inference that the VRP guaranteed plaintiff monthly benefits of $1,102.07 for the remainder of plaintiff's life. (*Id.*) Defendant argues that none of the provisions of the Plan or the VRP support this claim for more benefits, and that plaintiff knew that his benefits would decrease when he turned sixty-two years of age. (Doc. 21 at 12-13.)

The court finds defendant's arguments to be persuasive. Plaintiff elected the Level Income Annuity option shortly after he retired. (Brusca Aff., Ex. B at B&D 0102.) Both the Plan and the VRP Booklet provide that the Level Income Annuity payment option offers increased pension payments up to age sixty-two—when plaintiff became eligible for Social Security—and that the payments would be reduced thereafter. (Brusca Aff., Ex. A at B&D 0027; Brusca Aff., Ex. B. at B&D 0132.)

Plaintiff's evidentiary support for his contention that his benefits should not have been reduced is the Announcement Letter's chart showing a set amount that would be "[p]aid to you during your lifetime." (*Id.* at B&D 0117.) To the extent that that phrase is inconsistent with any Plan or VRP materials, it is not controlling. *See Alday v. Container Corp. of Am.*, 906 F.2d 660, 665-66 (11th Cir. 1990) (noting that under ERISA, letters and other informal documents that are inconsistent with the Plan "must be ignored," and the terms of the Plan are controlling) (citing *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir. 1986)); *see also*

15

*Wright v. Aetna Life Ins. Co.*, 110 F.3d 762, 764 (11th Cir. 1997).  The Pension Committee's findings addressed this issue:

> With respect to the announcement letter, we believe it was quite clear, when construed in its entirety [with the attachments], that the reference to "Paid to you during your lifetime" did not misrepresent that Mr. Brown would receive the $1,102.07 benefit beyond age 62 and throughout his lifetime.  The juxtaposition of that legend with the "survivor" legend beneath it clearly indicates that the distinction being drawn was merely one of survivorship and not the conferral of some new benefit guaranteed for life regardless of Mr. Brown's earlier payment election.  This meaning is further confirmed by the fact that the legend "Paid to you during your lifetime" is also placed next to Mr. Brown's <u>then</u> <u>current</u> benefit level of $921.63, which he clearly knew was subject to reduction at age 62.  In addition, the announcement letter was sent to Mr. Brown with a comprehensive brochure, which explained that the VRP benefit consisted of a re-computing of Mr. Brown's benefits under the Pension Plan, with an adjustment for three years in credited service and three years in credited age.  Nothing in the accompanying explanation about how the VRP worked suggested that there had been any alteration in his election of the Age 62 Level Income Annuity option. . . .

(Brusca Aff., Ex. B at B&D 0262.)  The court believes these findings provide a reasonable basis for the Committee's decision to continue plaintiff's benefits at the reduced level rather than reinstating the higher payment.  The Announcement Letter states that "[o]ther than the above increases in monthly pension payments and the Social Security supplement, there will be no changes in your retirement benefits if you participate in the VRP." (*Id.* at B&D 0117.) A chart in the VRP Booklet that accompanied the Announcement Letter reaffirms that the Level Income Annuity payment option, while providing lifetime monthly payments, also reduces the amount of those payments upon the recipient's becoming eligible for Social

Security. (*Id.* at B&D 0132.) Both this chart and the text of the letter should have apprised plaintiff that his benefits would decrease upon his sixty-second birthday.

The VRP Booklet does indeed state, as plaintiff argues, that the VRP provides "[i]ncreased monthly pension benefits." (*Id.* at B&D 0126; Doc. 22 at 13.) Even after the reduction in payments, plaintiff was receiving $237.07 per month, (Brusca Aff., Ex. B. at B&D 0149), more than four times the $56.63 per month he would have received had he not enrolled in the VRP (*Id.* at B&D 0110). Therefore, plaintiff was receiving "increased monthly pension benefits;" his benefits decreased at age sixty-two under both the VRP and the original Plan, but were greater both before and after plaintiff's sixty-second birthday under the VRP. Based on all the documents received by plaintiff, the Pension Committee's decision to deny him his requested "lifetime" benefits was not arbitrary and capricious. *See Jett*, 890 F.2d at 1140.

## C. Equitable Estoppel

Plaintiff argues that Black & Decker should be equitably estopped from denying him the level of benefits he was receiving prior to his sixty-second birthday. (Doc. 22 at 14-16). Plaintiff relies on an August 1998 telephone call with a man he believed to be Jim Booth. (*Id.*; Brusca Aff., Ex. B at B&D 0161.) Even if the court were to ignore the evidence that Booth apparently did not work for defendant at the time plaintiff claims to have spoken to him, (Jones Aff., Ex. A), this telephone call is wholly insufficient to allow an invocation of

17

equitable estoppel. In order to present an equitable estoppel claim under ERISA,[7] a plaintiff must show: "(1) the provisions of the plan at issue are ambiguous, and (2) representations are made which constitute an oral interpretation of the ambiguity." *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994) (citing *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285-86 (11th Cir. 1990)); *see also Wright*, 110 F.3d at 764 ("Since the plan document was unambiguous, there was no need to consider outside communications to glean the parties' intent."). Plaintiff cannot point the court to a provision of the Plan that is ambiguous. Therefore, plaintiff cannot make out a prima facie case for equitable estoppel, and his claim for equitable relief is due to be denied.[8]

---

[7] The federal common law of equitable estoppel is unavailable to plaintiff because ERISA preempts that body of law in cases involving oral amendments to or modifications of employee plans governed by ERISA. *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir. 1990).

[8] Plaintiff alleges he was damaged by his reliance on "[d]efendant's human resources employee's comments and representations, which orally interpreted the VRP Package." (Doc. 22 at 15.) Plaintiff is clearly referring to his conversation with Booth, during which plaintiff alleges that Booth told him that "if the letter [plaintiff] had received from [defendant] stated that [plaintiff] would receive $1102.07 for life, then that was the correct amount [plaintiff] would receive every month until [his] death." Regardless of whether this conditional statement constitutes an oral interpretation, Booth left his employment with defendant in April 1998, (Jones Aff., Ex. A), well before plaintiff claims the telephone call took place. In a second affidavit, plaintiff concedes he spoke to a man who responded to "Jim," but who plaintiff did not positively ascertain to be Jim Booth. (Doc. 22, Ex. C ¶ 4.) The statement of either a former employee or an unidentified "Jim" is not sufficient for plaintiff's equitable estoppel claim. *Cf. Deas v. Nation Sheet Metal Workers Union Nat'l Pension Fund*, 114 F. Supp. 2d 1259, 1275-76 (S.D. Ala. 2000) (finding that oral statements made by a union representative, who was not an agent or trustee of the pension fund, were insufficient to create an equitable estoppel claim).

## IV.  CONCLUSION

For the reasons stated herein, as well as for the reasons stated and dictated in open court on February 17, 2004, the court is of the opinion that defendant's Motion for Summary Judgment was due to be granted. An Order granting defendant's Motion for Summary Judgment was entered on February 18, 2004.

**DONE** this the 25th day of March, 2005.

SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE